This afternoon is case number 4-17-0917, People v. Davis. Appearing for the appellant is attorney Ron Wilson and for the appellee is attorney David Manson. Good afternoon. Counsel, are you ready to proceed? Mr. Wilson, you may. May it please the court. Counsel, good afternoon, your honors. I represent Dennis Davis on behalf of the Office of the State and Public Defender. This case was remanded for a crankle inquiry following Dennis' direct appeal and after that remand, a hearing was held. During that hearing, Dennis explained his allegations of ineffective assistance of counsel. He told the court that his attorney failed to call Kenesha Cox, an alibi witness who could have placed Dennis at her home a couple miles away from the shooting scene at the time that the shooting was taking place. Defense counsel didn't dispute Dennis' version of Cox's proposed testimony. Dennis told the court that defense counsel failed to call Joel Shoulder. Mr. Shoulder lived at the house where the shooting allegedly occurred and would have testified that Demuriel Cunningham, one of the state's key witnesses and the only witness to identify Dennis at trial as one of the shooters, wasn't in Joel Shoulder's house that night. He simply wasn't there. Dennis also told the court that defense counsel should have objected to hearsay testimony provided by Colton Green, testimony that implicated Dennis in the shooting. Counsel didn't object to that testimony. When they were discussing that portion of Dennis' argument, counsel admitted that if he didn't object to hearsay testimony, it was merely because he got caught up in the midst of trial and not for any other reason. The court noted that it appeared that counsel made some mistakes as far as objections, but it still concluded that Dennis' critical claim should be dismissed. That's because the court applied the Strickland test to Dennis' claim rather than the applicable standards, which would only require Dennis to show that his case suffered from possible neglect. In essence, the court overstepped the initial Crankle preliminary determination and required Dennis, a pro se defendant with limited education, who's incarcerated in the Illinois Department of Corrections, to meet a test that was only applicable once Dennis had been appointed an attorney who could represent him in front of the court during an evidentiary hearing. Not for the Crankle proceedings. Okay. Well, I've read several cases on this, and I may be getting it mixed up. So he was not appointed an attorney. It was a preliminary Crankle proceeding. His trial attorney was present for the proceedings. The state was there. I believe the state said that they weren't going to participate because... They're not supposed to. They're not supposed to. That's a good reason. It is a good reason. But this was a preliminary inquiry where Dennis was just required to meet the Crankle requirements, the preliminary Crankle requirements. The court used the wrong standard here. It kind of leapfrogged over what was the appropriate standard. And as a result, Dennis has argued at a minimum that he's entitled to have his case sent back to the circuit court for the court to use the proper standards when evaluating his claim. But his argument really goes farther than that. Dennis has argued that based on the evidence or the statements that he made during that Crankle inquiry and the court's exchange with the attorney who represented Dennis during the trial proceedings, that he established possible negligence. And as a result, when his case is remanded, he should be appointed an attorney who then can litigate this, who can find the evidence that he needs to support his claims, who can talk to the witnesses and subpoena the witnesses so they can have a full-blown hearing pursuant to Strickland. So the court, which by the way, the judge in this case was not the judge that heard the trial in this case, can have a full understanding of what happened and how Dennis's claims of ineffective assistance of counsel really impact his arguments. Now, at the outset of the case, I noted three different things that Dennis alleged that his attorney failed to do, and I just want to spend a few moments talking about each one of those to further explain why this should go back for the appointment of counsel who can represent Dennis. If this court would remember from the direct appeal proceedings, this was a case where the witnesses testified that two men approached Joel Shoulder's house wearing all black and just began shooting. Now, that happened at 1130 p.m. at night. We don't know exactly the time that the shooting happened. The state, I believe, proffered the 1130 time. They worked off of the time when the police received the first shots fired call, which was around 1134 that night. At 1148, Dennis was stopped for a traffic infraction a couple miles away from where the shooting took place, wearing a red plaid shirt and driving a Jeep that was registered to Kenesha Cox. So the evidence in this case is already kind of tenuous on whether Dennis was the one that actually committed this offense. The Jeep was inventory. There was no sign of any black clothing or weapons or any evidence tying into the offense here. Dennis has pointed out that there was a witness that he told his attorney to call, Kenesha Cox, who owned the Jeep that Dennis was found driving when he was stopped. According to Miss Cox would testify that Dennis was at her house at 1130, a couple miles from the scene of the shooting, and obviously couldn't have had anything to do with the shooting itself. Defense counsel didn't call that witness. Instead, defense counsel said, well, I didn't call her because I wanted to rely on Vicki Reeder's testimony. Vicki Reeder is the woman with whom Dennis lived in Macomb, Illinois. Vicki Reeder knew when Dennis left Macomb. She knew when he returned to Macomb. She had no idea where he went once he left her house. There's no way that she could have established any sort of alibi for Dennis. She had no idea where he was at 1130. She didn't even know if he was really in Decatur or not. And here we have Kenesha Cox, a witness who, again, once Dennis explained Miss Cox's testimony, defense counsel didn't disagree with what she would say. He didn't say, no, that's not what she told me. He didn't say that there was any reason not to call her except he wanted to rely on this other witness who was not an alibi witness, who could not have established where Dennis was at the time of the shooting. So, at the very least, Dennis has argued that defense counsel's failure to call Kenesha Cox as a witness establishes possible neglect and requires that his case be remanded so an attorney can be appointed and can represent him during critical proceedings. But that's not the only example that we have here. Dennis has also argued that his attorney failed to call Joel Shoulder. Now, again, Mr. Shoulder's testimony was essential in this case because, again, if this court would remember, Demario Cunningham was the only witness to identify Dennis as one of the shooters at trial. On direct appeal, we litigated the question of how credible Demario's testimony was. The odd thing about Demario is he was in Joel Shoulder's home and there were people coming and Demario there. Now, this court stated that that didn't mean that Demario wasn't necessarily there. Demario, the evidence of the record establishes, he was hiding out for a murder himself. He was wanted by the police. So somebody that's hiding out for a murder doesn't make himself readily known to the people that are coming and going. Also, when the shooting started, Demario said that he hit the ground and crawled out of the rear exit of the house. So people running into the house during the shooting may not have seen him. But what this court didn't know at the time of the direct appeal, what I didn't know and what the jury certainly didn't know, was that Joel Shoulder, the owner of the house, or at least the person that lived there, was willing to say that Demario was not in the house on the night of the shooting. Obviously, if he's not there, he can't identify Dennis as one of the people pulling the trigger and shooting all of these people. Now, we have a third example, which is Colton Green's testimony. Colton Green was someone who was present and overheard a conversation. It appeared that it was Robert Dickerson, Dennis' co-defendant, who incidentally was acquitted of these murders, who made some statements about any Cunningham would do, how they wanted revenge on the Cunningham family, that sort of thing. He was saying that they were going to go out and harm someone in the Cunningham family. Dennis has argued that his attorney should have objected to that, to those statements as well. Counsel didn't object to those. Defense counsel acknowledged that if he should have objected to that and didn't, the only reason was because he was caught up in the midst of trial. And the court, when it was ruling on Dennis' Krenkel claims, noted that it sounded like counsel apparently made some errors when it comes to objections. I would proffer that that in and of itself is a showing of possible neglect, when the court is saying that defense counsel probably should have objected to some evidence that the about the analysis, the Krenkel analysis, and how it differs from the ultimate ineffective assistance analysis. So people be jolly, the Supreme Court said that the trial court is to make a determination if there was possible neglect, right? That's the terminology, possible neglect. What is it that the trial court must find in order to determine whether or not counsel should be appointed when it comes to this terminology of possible neglect? You say that prejudice is completely divorced from that determination, is that right? Yes. So a mistake. Let's say you have a readily identifiable mistake that had been made. Let's say that trial counsel failed to object. Let's say it's a hearsay objection that should have been made very clearly was missed. But let's say it was as to a chain of custody witness. So ultimately the trial court knows full well this had no impact on the outcome of the case. But that would be the prejudice part of it, right? Where does it fit? I'm trying to hone in on the possible neglect determination here, because that's the lens through which all of this has to be viewed, right? Right, that's correct. So it is a little, the case law isn't necessarily clear where the lines are drawn with this analysis. What we do know is People v. Moore talked about a court denying a claim when it determines that the claim lacks merit or it pertains to matters of trial strategy. But if it is an issue of the allegation showing possible neglect, new counsel should be appointed. Now, I'm not really good with the line drawing just in general with where the line generally is in the analysis. What I do know is in the case that we have in front of us, where we have a issue of defense counsel not calling an alibi witness who can testify that the defendant wasn't at the scene of the shooting, that he was at her house at the time the shooting was taking place, a couple of miles from the scene of the shooting. Where we have a witness who defense counsel decided not to call, who would testify that the state's key witness, the only witness to identify the defendant at trial as one of the shooters, wasn't even in the house at the time. And where we have key hearsay evidence that was admitted without objection that implicated Dennis in being involved in a discussion of these men who were going out looking to, I believe Colton Green said they were looking to start a war, that those issues are great examples of what I would deem possible neglect. I think they even go further than that. But certainly for our purposes and for the analysis that's set forth in Jolly and more, in this case, those I would argue are clear examples of possible neglect. And I know that's not a direct answer to your question, but when you get into the whole idea of line drawing, it sometimes leads to more gray than it should. And when Dennis has the case that he does here with what seem to be specific examples of evidence, any one of which could have resulted in a completely different verdict, especially given the weakness of the state's overall evidence regarding Dennis' involvement in the shooting here, this case I think is a prime example of possible neglect. If a crankle claim can be dismissed because it lacks merit, I mean that terminology is used also in cases, right? If it lacks merit, I'm trying to figure out, okay, how do we approach that as a court of review? What are we looking at here? Does that encompass also a lack of prejudice if it lacks merit? Well, if you think about it, the word merit and the word prejudice must have different meanings when it comes to the case law. Because the body of case law that's developed around crankle claims talks about a complete absence of merit, or an absence of merit. It's a very cut and dry sort of analysis. The crankle case law doesn't talk about merit, it talks about prejudice, or I'm sorry, the strickling. It doesn't talk about merit, it talks about prejudice. Two different words used essentially in the same analysis. They almost have to mean something because if you look at a crankle claim and said, I'm dismissing this claim because it doesn't have, or the defendant can't show prejudice, then why are you even having a crankle claim? Why aren't you just leapfrogging that and going to the strickland analysis, which the case law shows, in fact crankle even shows, you can't do. In crankle, kind of the grandfather of all of this, it said the defendant will be appointed an attorney who then can establish, or attempt to establish whether the defendant acted unreasonably and whether there was prejudice. That's what the crankle case says counsel should do. If that's what should happen during what I'll call a second stage crankle inquiry, after the defendant's been appointed an attorney, it's not a burden the defendant should be held to when he's making these pro se allegations of ineffective assistance of counsel. So Mr. Wilson, going back to that hypothetical that I gave you. Yes. Defense counsel failing to object in the face of a clear case of hearsay testimony, and it's a witness establishing chain of custody, so it's very peripheral in terms of the merits of the prosecution. That claim, the crankle claim, could be dismissed outright if it lacked merit, if it pertained to matters of trial strategy, or is conclusory, misleading, or legally immaterial. Just going off of how it's set forth in your group. Sure. Those are the possible bases for dismissing outright. Excluding the first one, which is lack of merit. So did it pertain to matters of trial strategy? No. There's nothing strategic about failing to object in that circumstance. Or is it conclusory, misleading, or legally immaterial? Is it legally immaterial? Maybe. I don't know. It goes back to the first one, lacking merit, because it seems implicit in that that we do look at the possible prejudice. Personally, I don't think so at this point anyway. One of the reasons for that, we are dealing with a pro se defendant, incarcerated, who's trying to simply make these claims clear enough for the court so the court understands what the nature of the claims are. If I can give the court an example, I don't know if it will help or not, but if this was a defendant who filed a pro se petition for post-conviction relief, and it's sent to the court, and within 90 days, the court dismisses it and says, I'm dismissing this petition because the defendant has failed to plead a substantial constitutional violation, with no mention of the gist standard at all. We wouldn't be asking, well, since the court already found that there's no substantial constitutional violation pled, there's really nothing wrong with a dismissal here. The reason we don't say that is because it's not the standard that applies at this stage. At that stage, the defendant just has to prove a gist. And here, when Dennis goes and cracks open a law book in the prison library and looks at what he has to establish in order to pursue it some more and several decisions from this court, that what he has to show is possible neglect of his case. That's what a pro se defendant is going to then try and do in his pleadings. And then the way the process works, the way it's supposed to work, is once he meets that standard, an attorney is appointed who then can shape his claims, can mold his claims, can get the evidence by subpoena, can question witnesses, they can have an evidentiary hearing where he can establish the prejudice under Strickland. That's the way that this is supposed to work. That's not the way it worked here. And for that reason, Dennis would ask that his case be sent back, that it be advanced to what I would call the second stage, where he's appointed an attorney and they can actually have a very substantial errors in counsel's conduct during trial had upon his case. Thank you, Your Honors. All right. Thank you, Mr. Wills. Mr. Manch, response? Good afternoon, Your Honors. May it please the court, counsel. Just to turn in response to your initial question, defendant was appointed counsel in this case. There was an earlier hearing where the court appoints counsel. But that counsel that was appointed played no part in the Krankel hearing itself. He made no arguments. He did not question the defendant. The only thing he did was help the defendant hand the judge the exemption. But the court did specifically appoint counsel for the Krankel hearing, right? There was counsel appointed, yes. And the counsel didn't... I'm going to ask Mr. Wilson how he responded to my question in the negative when he gets back up to rebuttal. Thank you, though, for clarifying. But, yes, there was counsel appointed. It was like a safety measure. He wanted him to explain the Krankel proceeding to him, but then doesn't participate. I think that's what you're correcting there. Like I said, the counsel was appointed... Well, I'm not saying it was proper to appoint counsel. This was a Krankel hearing. Yes. No counsel was needed to be appointed. Correct. It was simply supposed to decide, the court is supposed to decide whether counsel needs to be appointed so he can actually have a full hearing on whether counsel was ineffective. That's what was supposed to happen. That's correct. That's not what happened here. That's not what happened. It came back from this court. There's a hearing before the court, and the court sent this back for a Krankel hearing. I'm going to appoint somebody to assist you on that, explain the situation, explain everything. But then he came to the hearing, and counsel's participation was about the same as the state's attorney. None. The only thing he did was hand the judge, or refer the judge to some of the exhibits that the defendant was wanting to present. That was his only... analogy would be a standby counsel for trial, where some of the... that kind of thing. But he did not take an active part in the hearing itself as far as presentation of the claims or making any kind of arguments. He was just there to help present the affidavits, or the exhibits. But the counsel was appointed, and I thought that's kind of odd, too. But, getting to the merits of the case, the trial court's reference to Strickland, I think, is completely proper under Dickerson and under Chapman. The... anymore the standard set was the trial court is to examine the defendant's allegations, and if he determines it lacks merit, or if he determines it pertains to matters of trial strategy, he can dismiss the defendant's allegations and need not appoint counsel. The only way you can make a determination as to whether it lacks merit is through the Strickland standard. And this court noted that, in Dickerson, that the only way you can make a determination whether there's merit to the defendant's claim is to apply Strickland's. So, I think that the trial court's application of a Strickland standard in the context of a crankle hearing is entirely proper and correct. It does not create an additional burden upon the defendant. How is that not collapsing two processes into one? Because it sounds like you're advocating that the trial court actually determine on the merits the motion, the post-trial motion, claiming an effective assistance, when it determines whether or not appointing counsel should be made. Well, in more, it says that the court can do that by finding that the defendant's claims lack merit. And how do you determine the defendant's claims lack merit? Either they're legally irrelevant, or, as in your example there, they could have had absolutely no effect on the trial. The things that this person, this defendant pointed out, weren't things that were totally extremes. That's the idea of the judge. The trial court found that, as far as the witnesses were not called, that that was a matter of trial strategy. That counsel got up and said, I was not told about this one particular witness. That the defendant said I should have called. I never knew about him at all. With respect to the witness that would have said that Demarius was not in the house, he says, I did not call him because he had given so many different inconsistent statements that I just didn't trust putting him on the stand. The other witnesses, he said, based upon the statements that they had given before trial, and based upon the reluctance to testify, I decided not to call them and to rely upon this other witness. So this is clearly a matter of trial strategy, and the trial court noted that. What defendant is saying is that the trial court also has to make a determination, yeah, this was strategy, but it was bad strategy. But that's not quite consensual. That would be what would happen if you applied strictly. You could have trial strategy that, on its face, looked like it was possibly, arguably, neglected the case. And then an attorney would be appointed, flesh it out, the defendant might lose on the prejudice prong, but at least he would have had an attorney flesh out what he tried to allege, or what he did allege, what he wanted the court to take notice of. Well, as far as the witness is not called, there is not much more fleshing out that could have been done, unless you want to bring in the actual witnesses to testify at a hearing. Your attorney might say, yeah, I'm going to go interview them, and we'll decide whether we call them at the evidentiary hearing. But as far as the question of whether there's possibly neglect of the case, you have the defendant alleging, this is what the witnesses would have testified, the attorney explained, yes, I knew of these witnesses, I've had their pre-trial statements, but based upon those pre-trial statements, and based upon the inconsistencies and their reluctance to testify, I decided not to call them. So it is a matter of trial strategy. It's one that a reasonable attorney could make. Just because somebody else says, no, that's bad strategy, or you should have done something else, does not make it ineffective assistance to counsel, even under a Strickland standard. But, Mr. Manchin, the problem is, we're not supposed to be using the Strickland standard on a Cranklin hearing, are we? Well, in Dickerson, this court says yes. No, they said that Dickerson said that just making a passing reference to Strickland is not necessarily fatal to whether there was a correct hearing on Cranklin. That's a little bit different than what you're suggesting, that Dickerson said, you're supposed to use the Strickland standard. They basically said, okay, we're going to let this go because there was a passing reference. Isn't that what Dickerson stands for? Some of the language that this court uses in Dickerson was, how can one evaluate whether, this is directly from Dickerson, how can one evaluate whether counsel is ineffective without analyzing whether counsel is in the first quorum's decision? This just so happens to be the first quorum of Strickland. The claim here is simply because the trial court relied upon Strickland. The defendant was not given a correct hearing. I think that he was given the exact hearing that he was entitled to. What I'm suggesting is the Strickland standard is higher than the standard of possible neglect. The use of the word merit can have slightly different meanings depending on its context. It could have a different meaning in a civil case where it's a loser, but it's a legally defensible argument. Here, we're having him say, these witnesses weren't called, or this witness was called, but this one wasn't. This one was really an alibi, and this one was just somebody from Macomb. I don't know that I want to evaluate whether that's a winning argument. I think the analogy counsel gave about the gist versus, you can't establish a constitutional violation, we distinguish those two things in the Crankville hearing. Is there possible neglect? Could a lawyer assist you based upon what you have alleged show that there was neglect of your case? If so, that attorney should be appointed to represent you, and then we'll go through the evidentiary hearing. Most of the time, you're going to lose. I think the problem with this is the exact language of Crankville itself is unclear. As counsel says, where do you draw the line? Because Moore says the trial court can determine on the merits that the defendant's claims are without, can determine that the defendant's claims are without merit. Yeah, you could do that if the defendant claimed that my witness was a nine foot tall invisible rabbit that I would have called him to testify and my attorney said, I don't think that would go very well with the court. Of course, at that point, I ought to be going back to his competency to stand trial or the plea or whatever else was going on. There could be some outrageous things like that. But as Moore says, you can do it either on the merits or if it goes to the matter of strategy. And here, we have basically two sets of claims. One, that witnesses were not called, and that was clearly a matter of strategy. The trial court found that that was a matter of strategy. The trial court also found there were mistakes regarding objections. How do I evaluate the meaning or weight of those mistakes without having counsel explain it to me? Because the counsel is going to do a better job of explaining it to me than the defendant will. So the trial court already acknowledged that, yeah, there's some stuff here that probably should have been done differently. Some mistakes. But that, again, is not the standard for Strickland. I don't care about the standard. The only, setting aside the missing witnesses, the only allegation is that an objection should have been made to Green's testimony. Green's testimony was basically that there was a discussion involving the defendant in which these guys were planning an attack. Yeah, going to war. This is not hearsay. These are the defendant's statements, and you bring in the other people's statements to place the defendant's statements in context. The defendant's statements cannot be hearsay. This is the defendant planning the offense, planning the attack. That is not hearsay. Any objection would have failed. So there could be no... So you're pointing out the legal reasons why it's not hearsay. I'm just saying the defendant, pro se defendant, is left on his own to complain about why did that come in. Whereas his attorney could explain that is hearsay. Because nobody knows what hearsay is anyway. And there's so many exceptions to it that you don't know whether it's going to come in or not. I guess I'm arguing for the point that maybe there's enough to appoint counsel. And if there's not enough to appoint counsel, why in the world did he appoint counsel? We already know that that's strange. Talking about judicial economy, if you're going to go ahead and appoint counsel and have him explain the proceedings and take care of the exhibits, you might as well just go ahead with that part of the proceeding. Counsel. And then have counsel tell you whether he wants to have an entry hearing on behalf of his client. That's a speech, not a question. It was a good one, though. But again, the standards for Crankle is that the court has to determine, does it have merit? Was it a matter of strength? Take the example that the counsel should have objected to the officer stating his title. That is clearly a nonsensical argument. So how nonsensical does it have to be before the trial court can determine on the merits that there's just no point in going further? And here the trial court considered the defendant's allegations, said the failure to call these witnesses was a matter of strategy. That ends the inquiry. Over the course of the last five years, what is one of the things that has caused the most reversals to the state in criminal cases of this sort? Probably ineffective assistance of counsel. And followed up closely by screwing up the Crankle hearing. Would you agree? Yes, there's been a number of cases where it's been screwed up. Several cases where the state's attorney was allowed to participate. And where the trial court just ignores the allegations entirely. Or the defendant never brings the allegations to them and then we have to go back for it because the judge never knew about them and should have. So we have here a judge trying his best to follow Crankle. In an odd way by appointing counsel first to explain the whole situation to the defendant. And then making the determination that the defendant's allegations go to strategy and that there's no merit to them. So that if, although there's possible mistakes were made, it could not have had any effect on the trial. You and Mr. Wilson have another case also out of Macon County. Ineffective assistance, different trial. The trial judge collapsed the two hearings. A Crankle hearing and a hearing on a motion, a post-trial motion for ineffective assistance. I mean that he instead of determining the basic Crankle issue made the overall determination that there was no ineffective assistance. Are you seeing a lot of these cases? I have not seen that many of those type of cases. And by that I mean this practice where the trial court makes a determination there was no ineffective assistance when it is a Crankle inquiry that brings the parties to court. I have not seen too many cases where the trial court  makes a determination. I have seen a number of cases where the court has determined that there are no merits to the defendant's claims of ineffective assistance. I've also seen appellate court cases where they said the trial court on appeal saying applying the Strickland standards to what the trial court found, the trial court probably found that there was no ineffective assistance of counsel. So cases are all over the place as to when and how and where Strickland comes in. Is it a standard applied by the appellate court in judging whether the trial court was correct or as in Dickerson and Chapman, can the trial court refer to Strickland in determining hey, there's just simply no merits. And given the fact that in Chapman the court says there's no problem when the court refers to Strickland in making its determination on a Crankle. Are there no further questions? I don't see any. Thank you. Rebuttal Mr. Wilson. Justice Turner, I will begin by apologizing. I did not remember that counsel was appointed as a defendant. I was able to overcome it. And I get now why you answered that way because the appointed counsel didn't really do anything. Anyway, thank you for the apology. The one thing based on your discussion with counsel from the state that I just want to note, Crankle isn't this hard. It shouldn't be this hard to comply with the dictates of the Supreme Court in all of the case law that has come since that. I realize it's difficult at times to draw lines in cases. A case of a nine-foot rabbit. Invisible. That's one thing. But as we get closer to a merits sort of argument, where that line is drawn becomes critically important. And that's why in this case I don't want to draw a line other than to say we're talking about alibi testimony of a witness who wasn't called in a case where someone was killed and three people were shot. We're talking about a gentleman who can testify based on a piece of writing that was provided to the defense prior to trial that the state's key witness wasn't in the house on the night of the shooting and couldn't have identified the defendant. These are not little matters. These are very weighty, very significant matters that a jury would have found very persuasive. During the state's argument, it talked several times about how the circuit court made a finding that defense counsel's decisions were trial strategy. Now, I didn't excerpt what the court said when it was making its ruling on the Crankle motion. The state did on page 12 of its brief at least a good part of what it said was, it appears the counsel made some mistakes. However, pursuant to the second prong of Strickland, I find that the defendant can't establish prejudice. And that's what sets this case apart from the Dickerson case that the state cited to. Justice Turner, I believe you may have been the one to point out that Dickerson was a case where the court faulted the defendant or didn't grant the defendant relief, I guess, because the defendant essentially said, well, you mentioned Strickland during a Crankle inquiry and that went too far. This is the complete opposite of a case of what we have here. If you look at what the court said here, the analysis is Strickland versus Washington controls in this circumstance. Here are the prongs. Here's the prejudice prong. Defendant can't meet the prejudice prong. Therefore, his case is dismissed. The court shouldn't have applied the Strickland test for this defendant, again, a pro se defendant, when... How do you explain that? It did to a certain point. The allegations in Chapman weren't as significant as the allegations that we have here in our case. So there's certainly a merits sort of argument that we have. The other thing is, if I recall Chapman well enough, and I'm not confusing it with another case, Chapman not only looked at Strickland, but it also had fairly significant analysis of the merits of the defendant's case, relying not necessarily solely on Strickland, but on the factual scenario that showed that counsel didn't act, or not unreasonably, didn't demonstrate possible neglect. It went through the analysis and essentially said, in reviewing what counsel did here, I find it all appropriate. Had that been what happened in Dennis' case, had the court said, you know, I've looked at all this. I don't see any possible neglect. I think everything he did was appropriate. That may very well be a different case. That's not the case that we have in front of us here. We have a judge who undoubtedly, the record is clear, solely relied on Strickland when denying the defendant's claims. And that is improper. That's something that cannot be done. And that's why we're asking this court to remand it for Dennis to have an opportunity to have his claims adjudicated. And I'll note just very quickly, in the State's brief, one of the State's arguments is that this case shouldn't be sent back for another Crankle inquiry. I argue Dennis hasn't had one yet. He hasn't had a Crankle inquiry that is compliant with the rules that have been established pursuant to Crankle and this court's precedent. He's entitled to that, and we ask that his case be remanded for one of those hearings. Thank you. The case will be taken under advisement and written decision shall issue.